METROPOLITAN LIFE INSURANCE COMPANY, Plaintiff, *v.* KNICKERBOCKER BROADCASTING COMPANY, INC., and Others, Defendants.

Supreme Court, Special Term, New York County, October 9, 1939.

*Townley, Updike & Carter* [*Stuart N. Updike* and *James W. Rodgers* of counsel], for the plaintiff.

*William Weisman* [*Norman Laidhold* of counsel], for the defendants.

SCHMUCK, J. The motion is addressed to the sufficiency of the affirmative defenses in the second amended answer of defendant Knickerbocker Broadcasting Company, Inc. The complaint is in libel based upon the broadcast of twenty-two alleged defamatory statements over radio station WMCA, owned and operated by the defendant corporation. Each one of these alleged libels is made the subject of a separate cause of action.

As appears from the allegations in the complaint, the plaintiff is a New York mutual insurance company with approximately 29,000,000 policyholders, selling two important types of insurance, one the familiar ordinary insurance; the other so-called industrial insurance sold on the basis of payments of weekly premiums.

At various times and on twenty-two occasions, each one separately set forth in a distinct cause of action, certain broadcasts, previously reduced to script and reviewed by the defendant, were permitted to be broadcast over station WMCA. The statements are set forth verbatim in the complaints.

In the first cause there is a charge that people have been bled of their hard-earned money and policyholders charged twice as much as they should have paid, by plaintiff and other companies. In the second cause the libel charges that plaintiff was engaged in a legalized racket which the speaker purports to expose. The third cause charges that policyholders have been " taken for a ride " by the weekly endowment insurance. In the fourth cause the broadcast accuses every insurance company of tricking policyholders by selling insurance policies on which the policyholders are paying from four to eight times more than they should. The other causes of action contain broadcasts along similar lines.

The charges against the plaintiff are alleged to be untrue, and by reason of the fact that they were published and circulated amongst hundreds of thousands of persons, it is averred they caused injury to the plaintiff's good name and reputation. It is also charged that the words were broadcast maliciously and for profit. Damages are sought in the sum of $550,000. Other defendants styling themselves insurance counselors are made parties defendant.

The defenses, besides containing denials, set forth a number of affirmative defenses, together with a cross-claim against the so-called insurance counselors who did the actual broadcasting, in a claim by the corporation to recover over against these counselors in the event that damages should be awarded against the defendant corporation. The cross-claim is immaterial upon this motion, the attack upon the answer being directed against the affirmative defenses only.

The first entire defense is one of qualified privilege. The second is the defense of justification on the ground that the matters broadcast are true. The third contains a partial defense alleging both privilege and justification. The fourth is the defense of fair comment. The fifth is a partial defense of good faith coupled with the statement that the publication was made from sources reasonably believed by the defendant to be reliable and published without malice and in the belief that they were true.

The first defense of privilege alleges that the several broadcasts were used in connection with programs involving public interest. They were permitted by the defendant in the belief that they were true, published without malice, and accordingly is is claimed they were privileged.

This defense is utterly without merit. The complaint shows that the broadcasting privileges enjoyed by the station were leased for pay. A qualified privilege protects one who, in his utterance, performs a duty, whether legal, social or moral, toward somebody who has an interest in having that duty discharged. No qualified

privilege extends to communications to newspapers and to the public generally. (*Bingham* v. *Gaynor*, 203 N. Y. 27, 32.) In that case defendant sought to plead qualified privilege because the letter given to the newspapers involved the discharge of a public duty. It was held that while the writer was privileged to address a complaint to the mayor for the purpose of having him inquire into charges against the public official, the delivery of the letter to newspapers in advance destroyed the privilege.

Conceivably, situations might exist where a policyholder in good faith complained to the insurance company of the conduct of some of its officials. But a letter to that effect to be considered privileged must be sent to the company and not distributed as an open letter. Here, however, a broadcasting corporation, for pay, allows alleged abuses existing in the business activities of the corporation to be broadcast. This method, by reason of modern invention, reaches an infinitely greater number of persons than if, in the proverbial manner, it were shouted from the housetops. Thousands of people are thus reached who have no interest in life insurance. But worse, if they have any intention of taking out policies, the tendency would be to frighten them away. A claim of qualified privilege under such circumstances is far-fetched.

A possible situation exists where broadcasting fair criticism about a public official might be covered by the claim of qualified privilege. It is one of the reasons why utterances made in an election campaign are not judged by the same standards as to the libelous character as ordinary ones. Both the speaker and the listener in that case have a public interest in the matter, and thus the situation approaches one in which the doctrine of qualified privilege is apt. In the case at bar there is no duty, but rather a commercial motive, to criticise a business organization, even though it serves a large part of the public. From this point also, therefore, the defense fails.

The second affirmative defense pleads justification by reason of the truth of the allegations. The criticism directed to the defense is that it is deficient in allegations of fact, and that the justification is not as broad as the charges complained of. If a defendant were permitted by legal practice to make a blanket and general assertion to the effect that the charges were true, there would be no criticism of the defense. As proper pleading requires a statement of ultimate facts, defendant has endeavored, in order to satisfy the rule, to state items of alleged ultimate fact to justify the twenty-two alleged libels. It was within its rights in pleading a single defense to all the twenty-two charges embodied in separate causes. (Civ. Prac. Act, § 262.) It has stated, in the affirmative defense, nine items of ultimate fact, of which the following are illustrative instances:

" a. induced people to buy too much insurance and the wrong kind of insurance;

" b. charged the holders of weekly endowment insurance policies exorbitant and costly premiums and thus made it impossible for the holders thereof to pay the premiums thereon and resulted in an unusual amount of lapses and surrenders before maturity;

" c. employed unfair and improper practices in selling weekly endowment insurance policies; * * *

" e. spent and is spending large sums of money for unfair and misleading propaganda designed to induce the sale of weekly endowment insurance policies and for the purpose of defeating legislation in an attempt to cure the defects of said policies; * * *

" h. attacked insurance counsellors unfairly and untruthfully, and * * *."

Some, if not most of these allegations, are conclusions and not statements of fact. For example, what is the meaning of " wrong kind of insurance " as alleged in paragraph " ninth-a?" How about the expression " unfair and improper practices?" The statement in " b " as to exorbitant and costly premiums resulting in unusual amounts of lapses and the statement as to unfair and misleading propaganda are a little closer to statements of ultimate fact than the others. The difficulty, however, with the entire pleading is that there are twenty-two causes of action. Even if the nine items mentioned were ultimate allegations of fact, it would be unfair to expect the court to pick out the appropriate item applicable to sustain the defense of any given charge. The court should not be asked to solve a jig-saw puzzle. While a defense of qualified privilege and one of justification does not necessarily require to be pleaded separately to each charge, the circumstances here, involving twenty-two different libels, would seem to require a separate defense to be pleaded in justification of each libel or of each related group of libels, if such there be. Thus, tested by this standard, the defense of justification is bad.

Similarly, the third separate and partial defense of justification is also bad.

The fourth defense, involving the defense of truth and fair comment thereon, is also bad. As is said in *Foley* v. *Press Publishing Co.* (226 App. Div. 535): " The purport of the plea is, that all the facts stated in the alleged libel are true, that there remains in the libel over and above all statements of fact certain expressions of opinion, which standing alone would be libelous, but that these expressions of opinion when related to the facts proved were fair comment and that, therefore, the expression of opinion was as fully justified as the statement of fact."

If the fundamental facts alleged in the broadcasts are true, then any fair commentary thereon, which is an expression of opinion of the broadcaster upon the facts, is justified. The difficulty is that defendant has failed to set forth the facts showing truth.

In Odgers on Libel and Slander ([5th ed.] p. 196) it is said: " It is then a defence to an action of libel or slander that the words complained are a fair comment on a matter of public interest. But this defence will fail, unless the words complained of are a comment, and not the assertion of some alleged matter of fact. * * * Comment on well-known or admitted facts is a very different thing from the assertion of unsubstantiated facts for comment. The distinction cannot be too clearly borne in mind between comment or criticism and allegation of fact." Reading the alleged libels in the light of this quotation, it is impossible to tell which part is a statement of fact and which is the comment thereon. Regardless of the extent to which the distinction should be pointed out in the affirmative defense of fair comment, it is clear that what the pleader considers the *truth* commented upon should appear somewhere. This element of truth may be undisputed, because it is an objective fact, such as a book, a work of art, or the act of a public official. Criticisms or analysis of these leading to complaints of libel might be vigorous without constituting libel, if they constitute fair comment and are not characterized by malice. But where, in the given defense, is the statement of the facts which constitute the truth upon which the " fair comment " has been made? The incorporation of paragraph ninth of the previous defense, with its statement of conclusions, may be read as a series of comments or criticisms. But, if so considered, where are the facts or " truths " upon which this is a comment? The pleader has failed to point these out. The fair comment plea must, therefore, fail.

The fifth defense is a partial one showing that defendant believed the matters published to be reliable, and permitted the broadcasts without malice and in the belief that the publications were true. The last assertion as to truth, referring as it does by specific reference to paragraph ninth of the complaint, vitiates the pleading, the allegations as to the ultimate facts being missing.

The motion to strike out the separate defenses is granted with leave to plead over. The court has some hesitation in permitting an amendment as to the defense of qualified privilege. However, it will not bar the defendant from an effort to endeavor to bring the new plea within the possible bounds of qualified privilege. The disposition of the motion is with ten dollars costs and ten dollars for the privilege of amending. Settle order.